IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                               **Case No. 11-40080-01-RDR**

KENNETH C. SMITH,

        Defendant.

## O R D E R

This order is issued in response to matters raised during a hearing conducted on November 3, 2011. At that hearing the court considered evidence and arguments relating to defendant's pro se motion to dismiss - Doc. No. 30. The court stated during the hearing that the motion would be denied. This order shall expand upon the reasons for that ruling. The court also considered an oral motion for a continuance of the trial which defendant raised after the court announced that the motion to dismiss would be denied. The court indicated during the hearing that the motion would be denied, but ultimately took the matter under advisement after listening to further comments from the parties. The court has determined that the motion should be denied for the reasons set forth in this order.

The court shall begin this order by considering the issues raised in defendant's motion to dismiss. Because defendant is representing himself in this case, the court has construed his

pleadings and statements liberally. U.S. v. Warner, 23 F.3d 287, 290 (10th Cir. 1994).

Selective prosecution

One of the arguments made in defendant's motion to dismiss was selective prosecution. During the hearing, the court asked what evidence defendant had to support his claim of selective prosecution. Defendant indicated that his case arises from the same or similar facts as a case against Richard Candelaria. Mr. Candelaria had criminal charges placed against him as did defendant. Both defendant and Candelaria had administrative disputes with the government which arose either from their employment or the incidents in this case. Defendant complains that while Mr. Candelaria's criminal charges were dismissed as part of a "global" settlement which also involved the administrative proceedings, defendant's criminal charges have not been dismissed as part of a "global" settlement. Defendant claims that he has PTSD and that he was a better employee than Candelaria. Indeed, defendant says that he was an "excellent" employee. Defendant asks what the "metrics" were for deciding not to dismiss his charges and suggests that he is being retaliated against for being successful upon his administrative employment complaints.

The court denied defendant's selective prosecution claim because defendant has failed to meet the demanding standard of proof required for selective prosecution claims. The Tenth Circuit

has stated that a defendant claiming selective prosecution must show that the decision to prosecute had a discriminatory effect and was motivated by a discriminatory purpose. U.S. v. Deberry, 430 F.3d 1294, 1299 (10th Cir. 2005) cert. denied, 549 U.S. 850 (2006). The court must act cautiously because a selective prosecution claim asks that the court exercise power over a "'special province' of the executive branch, a province in which, for good reason, the executive possesses broad discretion." Id., quoting U.S. v. Armstrong, 517 U.S. 456, 464 (1996). The Tenth Circuit has elaborated upon this point:

> The decision to prosecute "is particularly ill-suited to judicial review." Wayte [v. United States, 470 U.S. 598, 607 (1985)] . . . "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." Id.; accord Armstrong, 517 U.S. at 465 . . . Moreover, judicial review of prosecutorial decisions can "chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." Armstrong, 517 U.S. at 465 . . . Accordingly, "the presumption of regularity supports . . . prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." Id. at 464 . . .

Id. (emphasis added). For the reasons noted above, the standard of proof of a selective prosecution claim is a "'demanding one.'" U.S. v. Alcaraz-Arellano, 441 F.3d 1252, 1264 (10th Cir. 2006)(quoting Armstrong, 517 U.S. at 463). Even accounting for the

3

fact that defendant is representing himself in this case, the court finds that defendant has completely failed to provide clear evidence of discriminatory intent. There is no evidence beyond defendant's own speculation that the government gave defendant less favorable treatment because of defendant's filing of successful administrative complaints. The record is simply bare of evidence of discriminatory intent. The record is also short of evidence of discriminatory effect. The court has not been presented evidence which details the differences or similarities in the two cases or in the offers presented by the government in the two cases. Therefore, the court cannot even conclude that the alleged differences in treatment suggests a discriminatory effect from the government's actions. Defendant's conclusory allegations simply are insufficient to meet the burden of proof for a claim of selective prosecution. See U.S. v. Furman, 31 F.3d 1034, 1037 (10th Cir.) cert. denied, 513 U.S. 1050 (1994)(rejecting conclusory selective prosecution claim by a pro se defendant who argued retaliation for activity protected by the First Amendment).

### Miranda

Defendant's motion also made an argument that his Miranda rights were violated on or about the time of his arrest. Under Miranda v. Arizona, 384 U.S. 436 (1966), a person who is subjected to custodial interrogation by law enforcement authorities is entitled to be warned concerning his constitutional rights. If a

4

court finds that a person made unwarned statements during custodial interrogation, then those statements may be suppressed from the evidence at trial. See Dickerson v. United States, 530 U.S. 428, 444 (2000). The Miranda rule, however, protects trial rights and the violation of the Miranda rule is not necessarily a violation of constitutional rights. Potential constitutional violations occur only upon the admission of unwarned statements into evidence. U.S. v. Patane, 542 U.S. 630, 641-42 (2004). The government in this case has stated that it does not intend to introduce evidence of any statements defendant made while in custody as part of the government's case in chief. Therefore, the court does not believe there is a current controversy over the defendant's Fifth Amendment rights under the Miranda decision. See U.S. v. Horsley, 20 Fed.Appx. 827, 830 (10th Cir. 10/18/2001)(finding a Miranda claim to be moot when the government did not offer a defendant's statements as evidence at trial).

Withholding evidence

Defendant has argued that this case should be dismissed because the government is withholding evidence, particularly video evidence, which is relevant and material to the charges. The government has proffered that it has carefully checked the available video recordings at the relevant locations and has supplied defendant with anything that might be material. It is possible, according to the government, that some video recordings

5

taken at a jail were not saved and have been recorded over. The government has also supplied an affidavit indicating that no video recording exists of events involving defendant at the Irwin Army Community Hospital.

Defendant contends that it should not be up to the government to determine what evidence is shared with defendant. In the long experience of the court, however, the court has never made a general search of the discovery record in a criminal case or attempted to collect evidence on its own prior to trial in an effort to determine what evidence should be shared with a defendant. As the court remarked in a previous order in this case, the court is not suggesting that the government may ignore its obligations under Brady v. Maryland, 373 U.S. 83, 87 (1963). Courts, however, rely upon the prosecution to make a good faith effort to scrupulously honor its obligations under Brady and do not specify the extent of or timing of Brady disclosures prior to trial. See Leka v. Portuondo, 257 F.3d 89, 100 (2nd Cir. 2001).

Defendant has not established that video recordings exist or ever existed which would be exculpatory in this matter. Nor has he established that the government has acted in bad faith. Thus, he has failed to establish the elements necessary to demonstrate a violation of due process either for the destruction of potentially exculpatory evidence (see U.S. v. Beckstead, 500 F.3d 1154, 1158 (10th Cir. 2007) cert. denied, 552 U.S. 1304 (2008)) or for failing

6

to share exculpatory evidence with defendant. See U.S. v. Williams, 576 F.3d 1149, 1163 (10th Cir.) cert. denied, 130 S.Ct. 1307 (2009).

As further authority in the area of video recordings the court would cite the case of U.S. v. Parker, 72 F.3d 1444 (10th Cir. 1995). There, a traffic stop was performed by the Utah State Highway Patrol for an alleged swerving violation. Drugs and a gun were found in the vehicle. The traffic stop was videotaped, but the officer recorded over 39 minutes of the tape. The district court found that the officer acted negligently when he erased part of the tape, but not in bad faith.

On appeal, the Tenth Circuit held that no Due Process violation had been demonstrated because "it was far from 'apparent'" that the erased videotape evidence would have exculpated the defendants. Id. at 1451 (quoting California v. Trombetta, 467 U.S. 479, 489 (1984) requiring the exculpatory value of evidence to be "apparent" to police before destruction, to establish a Due Process violation). The Tenth Circuit further explained:

> [T]he only way the erased video tape evidence could be "apparently" exculpatory is if it demonstrated that the events did not occur as Trooper Bushnell related, that is, that he was lying about the events - - i.e., about finding the contraband prior to conducting the search. Whether Trooper Bushnell was telling the truth was essentially a question of credibility for the district court. The district court believed Trooper Bushnell and we have no basis to question the court's credibility judgment.

> Even if one assumed that the video taped evidence might have been exculpatory in the instant case, Defendants have not demonstrated that the video taped evidence is "of such a nature" that they "would be unable to obtain comparable evidence by other reasonably available means." <u>Trombetta</u>, 467 U.S. at 489, 104 S.Ct. at 2534. Along with Trooper Sorenson, Trooper Mangleson and Defendants participated in the recorded events. Hence, Defendants could have called Trooper Mangleson to adduce what the missing video tape evidence showed. If Defendants had a different version of the events than that related by Trooper Bushnell, Defendants could have taken the stand and testified at the suppression hearing. Accordingly, Defendants had a readily available source to replace the missing video tape - - Trooper Bushnell's testimony, Trooper Mangleson's testimony and their own testimony of the events. As a result, Defendants have not shown that the missing video taped evidence was constitutionally material under <u>Trombetta</u>.
>
> Defendants are further required to demonstrate bad faith on the part of the government in destroying the evidence because the exculpatory value of the missing video tape is indeterminate and "potentially useful" at best. [<u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988)].

<u>Id</u>. at 1452.

Similar findings in more recent cases include: <u>U.S. v. Houston</u>, 548 F.3d 1151, 1155 (8th Cir. 2008) (willful failure to preserve video evidence of a traffic stop does not violate due process in the absence of a showing of materiality and bad faith); <u>U.S. v. Drake</u>, 543 F.3d 1080, 1089-90 (9th Cir. 2008) (loss of digital recording of a robbery); <u>U.S. v. Branch</u>, 537 F.3d 582, 590 (6th Cir.) <u>cert. denied</u>, 129 S.Ct. 752 (2008) (intentional recirculation and destruction of a video tape of a traffic stop); <u>Godlock v. Fatkin</u>, 84 Fed.Appx. 24, 28, 2003 WL 22954301 (10th Cir. 12/16/2003) (absent showing of bad faith, no procedural due process violation from destruction of prison video tape used in connection

with disciplinary hearing where inmate lost 365 days of earned credit for involvement in prison assault and battery).

## False arrest, false imprisonment, malicious prosecution

Defendant's motion to dismiss makes reference to claims of false arrest, false imprisonment and malicious prosecution. These are civil tort claims and not defenses to the criminal charges raised in this case. Defendant can only raise these claims as part of a separate civil action for damages. His arguments that the facts do not support the criminal charges will have to be made to the jury in this case or to the judge after the government has had a chance to present its evidence.

## Oral motion for a continuance of the trial

After the court indicated that defendant's motion to dismiss would be denied and counsel for the prosecution presented defendant with a witness list, defendant made an oral motion to continue the trial set for November 8, 2011. The court listened to each side on this matter and stated that defendant's motion would be denied. After listening to more comments, the court stated that the motion would be taken under advisement and a decision would be announced shortly.

The court has decided to deny defendant's motion for a trial continuance for the following reasons. First, defendant has not acted diligently by raising this request shortly before trial. This case has been on file since May 5, 2011. Defendant has been

representing himself since September 15, 2011. The November 8, 2011 trial setting has been fixed since September 26, 2011. Defendant filed a motion to continue the motions date or a request for a teleconference on October 21, 2011. He did not mention a need for a continuance of the trial in that motion. Thus, defendant has known of this case and this trial setting for a significant period of time and has waited until the last few working days before trial to ask for a continuance without providing a good reason to justify the delay in asking for a continuance.

Second, there does not appear to be good cause to grant a continuance. Defendant has represented that a continuance is needed so that two "professional witnesses" could be available to testify at his trial. These witnesses are a nurse/practitioner and a counselor who can testify regarding defendant's PTSD diagnosis and treatment. The relevance of such testimony at the trial (as opposed to a sentencing hearing) is very questionable to the court. Defendant is not claiming insanity or a diminished capacity defense and has not filed the requisite notice under FED.R.CRIM.P. 12.2(b) to present such expert evidence relating to a mental disease or defect. Defendant has suggested that the government has considered his PTSD as a factor in plea negotiations, but that does not mean it is relevant to the issues of guilt or innocence that are presented to a jury. Also, it is conceivable that evidence that

defendant has PTSD could be presented without the "professional witnesses"; for instance, through defendant or some other source (such as a medical record) or even as a stipulation if such evidence was relevant to the case. Finally, the court has no explicit confirmation from the witnesses that they could not be present during the trial.

Third, granting the continuance at this late moment would cause significant inconvenience for the attorneys who have prepared to present this case, the seven (or fewer) military police witnesses who are scheduled to testify and have arranged an interruption in their training for deployment abroad to appear, and the court which is also in preparations to proceed to trial.

Summary

In conclusion, the court shall deny defendant's motion to dismiss (Doc. No. 30). The court shall deny defendant's oral motion for a continuance. The trial of this case remains set for November 8, 2011 at 9:30 a.m. Once again, defendant is advised that his decision to represent himself does not exempt him from following the rules of criminal procedure, the rules of evidence, and the rules of decorum in a courtroom. Defendant has shown the court respect, which the court appreciates, and both sides are counseled to continue to do so in this matter. Defendant, in spite of his pro se status, will be expected to follow the law as it relates to the possible defenses to the charges, the relevance of

11

evidence, and any issues regarding sentencing, including the application of the Sentencing Guidelines, if there is a guilty verdict.

**IT IS SO ORDERED.**

Dated this 4th day of November, 2011 at Topeka, Kansas.

                                  s/Richard D. Rogers
                                  United States District Judge